JOHN G. KOELTL, District Judge:
The plaintiff, Zann Kwan, is a former employee of The Andalex Group LLC (“Andalex”). She appeals from a judgment of the United States District Court for the Southern District of New York dismissing her ' complaint. The District Court (Forrest, J.), granted summary judgment dismissing the plaintiffs claims of discrimination, retaliation, and hostile work environment under Title YII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ét seq.- (“Title VII”); the New York State Human Rights Law (“NYSHRL”), N.Y. Exec. Law § 296; and the New York City Human Rights Law (“NYCHRL”), N.Y.C. Admin. Code § 8-107.[1] The District Court also dismissed the plaintiffs claim that Andalex violated the Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. § 1001 et seq. by failing to notify her of her right to continuing health care coverage pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 (“COBRA”), 29 U.S.C. § 1166 et seq.
On appeal, Kwan contends that she proffered sufficient evidence that she was subjected to a hostile work environment because of her gender and was retaliated against for complaining about gender discrimination. Kwan also alleges that the District Court abused its discretion by denying her statutory penalties under COBRA. For the reasons that follow, we affirm the judgment of the District Court except with respect to Kwan’s retaliation claims, as to which there are genuine disputes as to material facts that preclude summary judgment.
*838 BACKGROUND
In reviewing the District Court’s grant of summary judgment in favor of Andalex, “we construe the evidence in the light most favorable to the [plaintiff!, drawing all reasonable inferences and resolving all ambiguities in [her] favor.” CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 118 (2d Cir.2013) (citation and internal quotation marks omitted).
I.
Andalex is a small family-owned real estate management company specializing in large gaming and commercial properties. Allen Silverman is the founder and Chief Executive Officer. Allen’s sons, Andrew and Alex, are the Chief Investment Officer and Chief Operations Officer respectively. Steven Marks is the Chief Financial Officer. During the relevant time period, April 2007 to September 2008, An-dalex had approximately twenty to twenty-five employees.
A.
On April 9, 2007, Andalex hired the plaintiff to be Vice President of Acquisitions. Kwan was an at — will employee and was provided a six-figure salary, two weeks paid vacation, health insurance, and was eligible for a year-end discretionary bonus. The plaintiffs primary duties at Andalex involved analyzing cash flows, preparing financial models and projections, and performing due diligence on investment properties. From April to August 2007, the plaintiff worked with Andrew Feder, the Managing Director of Acquisitions. Feder testified that Kwan’s work product was “very good” and that he never had reason to criticize her competence or diligence. After Feder left Andalex in August 2007, Kwan reported directly to Steven Marks until she was terminated in September 2008. In November 2007, Andrew Silverman complimented Kwan’s work and told her to “[k]eep up the good work.” In December 2007, she received a bonus of $5,000.
On September 24, 2008, Andalex terminated Burton Garber, a male Andalex executive who had been with the company for several years. On September 25, 2008, Kwan left the office at 5:15 p.m., earlier than the standard departure time of 6:00 p.m. Andalex alleges that when Marks asked Kwan where she was going, she replied that she was leaving to play squash. Marks asked Kwan’s status on a project and she said that she would work on it the following day and left the office. The plaintiff alleges that she received permission from Marks to leave early, that her leaving had no effect on her work, and that September 25 was the first time she had ever left the office before 6:00 p.m.
The next morning, September 26, 2008, Marks met with Kwan and reprimanded her for leaving work early without permission. Amy Piecoro, the Director of Human Resources at Andalex, was present at the meeting. Although Marks testified that he had previously told the plaintiff not to leave early without permission and not to take long lunch breaks, Kwan testified that the September 26 meeting was the first time she had learned that there were set working hours at Andalex. Amy Piec-oro testified that prior to September 26, 2008, she had never been told that Kwan was arriving late, leaving early, or taking long lunches. Later that day, Andrew Sil-verman fired Kwan.
B.
According to Kwan, she was terminated about three weeks after she had complained to Alex Silverman that she was being discriminated against because of her gender. She alleges that she was fired *839 because of her recent complaint about discrimination. Kwan testified that on September 3, 2008, she asked Alex Silverman why she was being discriminated against and treated differently from the men in the office with respect to salary increases and bonuses. Alex allegedly told her that he and Andrew Silverman each speak with Allen Silverman about their “own men” and Allen then decides the increases and bonuses. About three weeks later, on September 26, 2008, Kwan was fired. An-dalex claims that Andrew Silverman made the decision to terminate Kwan.[2] Alex Sil-verman denies that the September 3 conversation ever occurred.
Andalex has denied that it retaliated against the plaintiff. Indeed it has denied that the alleged complaint of gender discrimination ever occurred. Its explanations for the plaintiffs firing have, however, evolved over time. Andalex initially contended that its change in business focus to international investments made the plaintiffs skill set obsolete. Subsequently, it shifted to an explanation that the plaintiffs poor performance and bad behavior were the reasons for the termination.
In a letter dated November 19, 2008, Andalex’s counsel explained that both Kwan and Garber were terminated because the business focus at Andalex had changed from domestic real estate to international gaming and hospitality:
[Kwan’s] skill set no longer matche[d] what Andalex need[ed] from her position .... As Andalex’s business shifted from U.S. — based office properties to Latin American hospitality and gaming interests, Ms. Kwan’s skill set became increasingly obsolete.... Ms. Kwan has no experience in the hospitality or gaming industry ... which Andalex deems necessary for the direction its business is headed. Notably, only weeks ago, Andalex terminated a senior portfolio manager who is male, [Burton Garber,] because it similarly concluded that his skill set was not a good match for the company going forward.
The letter also claimed that Kwan was terminated because “she repeatedly took long lunches, arrived to the office late, left early, and generally made little effort to make herself valuable to the company as its business focus changed.”
After Kwan filed a complaint with the Equal Employment Opportunity Commission (“EEOC”), Andalex filed its Position Statement (the “Position Statement”) on April 7, 2009. The introduction to the Position Statement explained that over the course of Kwan’s employment, Andalex’s “business changed dramatically.” Andalex switched its focus from “the acquisition, development and management of commercial, retail and residential properties in the United States,” at the time 31 Kwan was hired, to “investments in Latin America and the Caribbean” and a “business plan abroad.” The Position Statement argued that “the termination of Ms. Kwan’s employment [was] for reasons having nothing to do with her gender or national origin. Rather, her skill set no longer matched the needs of either Andalex or its foreign hospitality and gaming division.” The introduction did not allege that Kwan’s poor *840 performance or behavioral problems contributed to the decision to terminate her.
The body of the Position Statement also focused almost exclusively on Andalex’s change in business focus. Andalex represented that although it had attempted to “integrate Ms. Kwan into its foreign hospitality and gaming division, as domestic acquisitions came to a complete halt,” Kwan was not suited to working on such transactions because she did not speak Spanish and lacked experience in this new area of business focus. Andalex represented that Kwan was unable to adapt to the change in business focus and that both she and Burton Garber had been terminated because of the change in business focus:
While Ms. Kwan’s performance in the context of the domestic real estate aspect of the operation was acceptable, she had failed and had been unable to make the transition to the foreign hospitality and gaming aspect of the business operation. In this context, ... her employment was terminated.... During the same time frame, Burton Garber, a male, who is not of Asian nationality, was also notified of his termination based upon the disposition of Andalex’s domestic real estate portfolio and the growing focus on foreign business.
Andalex reiterated that “both Ms. Kwan’s and Mr. Garber’s employments were severed as a consequence of the company’s shift from domestic real estate ownership and management to the foreign hospitality and gaming business.” Andalex repeated this position:
As noted above, the company’s emphasis shifted from real estate in the United States to hospitality and gaming in Latin America and the Caribbean. Ms. Kwan did not have experience in hospitality or gaming acquisitions. She also did not speak Spanish. Her skills simply no longer fit in with the business of the company.... Ms. Kwan was never singled out for disparate treatment. Ms. Kwan conveniently fails to note that Mr. Garber’s employment had been terminated around the same time that her employment had been terminated. His termination was for the same basic reasons as was Ms. Kwan.
In the argument section of its Position Statement, Andalex framed the dispute between the parties as “begin[ning] with whether Ms. Kwan was qualified to perform in the aftermath of the corporate changes in operations.” The argument proceeded to tie Kwan and Garber together and claim that the change in business focus was the reason for their terminations:
Andalex asserts that Ms. Kwan did not have the needed qualifications and abilities to transition with the changes in corporate focus. Ms. Kwan and Mr. Garber were both laid off at around the same time for the same business reasons. Andalex has presented a facially valid, independent and non-diseriminato-ry basis for the actions taken.
Andalex’s Position Statement also made brief reference to Kwan’s performance in response to her claims that her performance was excellent, that she had always carried out her responsibilities, and that she had never received written or oral performance warnings. Andalex alleged there were “several instances in which Ms. Kwan’s work product' contained significant errors,” including “at least one case [where her performance] adversely affected a transaction being negotiated with a global financial institution.”
Andalex also alleged that Kwan’s behavior contributed to its decision to terminate her. Andalex alleged that on at least two occasions Kwan had behaved inappropriately by taking photographs of Steven Marks despite his repeated requests that *841 she stop. Andalex also claimed that “[t]o-ward the end of her employment, Ms. Kwan was taking long lunches and leaving the office early,” and referred to her alleged early departure for a squash game.
Any fair reading of Andalex’s Position Statement to the EEOC indicates that An-dalex claimed that Kwan was fired primarily because its business focus had changed. Kwan was therefore terminated at about the same time as Garber, a male non-Asian, and Andalex could argue that the reason for both 23 terminations was the same. This rationale undercut any argument that Kwan was terminated because of discrimination based on her gender or national origin.
Andalex’s explanation that Kwan was terminated because of a change in Anda-lex’s business focus was undermined by Marks’s testimony at his deposition. Marks testified that Andalex’s business focus had already shifted from domestic real estate to international hospitality and gaming by the time the plaintiff began to work at Andalex. Marks testified that “at the time [Kwan] came in, [Andalex was] looking to acquire Curacao.... [and] some properties in Mexico. And [Andalex was] in the process of trying to raise equity with ... JP Morgan to expand the hospitality and gaming business plan.” Marks testified that although Burton Garber had been terminated because of the shift in business focus, Kwan was not terminated for that reason “[b]ecause she had been working on casino-related projects soon after she started.” On the other hand, Andrew Silverman testified that the plaintiffs termination was the “[culmination of her poor performance and the fact that ... our business model had begun to change.... ”
Andalex now alleges that Kwan’s poor performance, illustrated by three discrete incidents, was the chief reason for her termination. Of the three incidents, only one was mentioned in Andalex’s Position Statement before the EEOC.
The first instance, referred to briefly in Andalex’s EEOC Position Statement, involved Kwan’s error in preparing a financial model for possible equity funding. The project was reassigned. Andalex also alleges that Kwan was late in preparing a financial model for a casino acquisition in Argentina. Additionally, Andalex claims that Kwan was late in preparing a financial projection for a Mexican acquisition and that the projection contained significant errors. Neither the Argentina project, nor the Mexico project, was mentioned in the EEOC Position Statement.
Andalex also alleges that Kwan’s behavior contributed to the decision to terminate her. Alex Silverman testified that Kwan had conducted herself unprofessionally at several business meetings. Marks also testified that Kwan did not abide by the standard work hours, getting into work late, leaving early, and taking long lunches.
C.
The evidence with respect to Kwan’s COBRA claim is as follows. After her termination, Kwan was entitled to receive notification under COBRA regarding her right to continue to receive health insurance benefits. As Director of Human Resources, Amy Piecoro was responsible for notifying Andalex’s health -insurance claims administrator, Paychex, Inc. (“Paychex”), about Kwan’s termination; so that Paychex could send Kwan notification of her right to continue her health insurance benefits. Piecoro alleges that she completed and sent the COBRA employee data sheet to Paychex on September 30, 2008, but Pay-chex claims that it never received the form *842 and therefore did not send the COBRA notification to Kwan.
Andalex claims that it discovered that Kwan had not received her COBRA notification form only after her attorney raised the issue in 2009. On October 12, 2009, more than a year after her termination, the plaintiff received notification of her COBRA rights from Paychex. Kwan then allegedly called Paychex several times in October and November 2009 to determine the amount she owed for her first premium check. The premium for the policy, stated in the notification form from Paychex, was $1,942.81 per month. On December 1, 2009, Paychex sent a second COBRA notice to the plaintiff offering Kwan participation in a different health plan, Health-net, for a monthly premium of $990.24. Kwan testified that she could not afford the premium for coverage under the Healthnet plan. When the plaintiff sought clarification about the differences between the original and Healthnet plans, Anda-lex’s broker allegedly told her that all further communications would “have to go through the attorneys.” Kwan did not enroll in the Healthnet plan.
The plaintiff remained unemployed and without health insurance until she began new employment ■ in Singapore in April 2010. Kwan testified that from the time her Andalex coverage lapsed in October 2008 to when she secured new insurance in 2010, she and her husband incurred un-reimbursed medical expenses of “a few hundred dollars.” Kwan alleges that she and her husband avoided and delayed seeking medical attention during the period they were without health insurance, including psychological counseling for the emotional distress associated with Anda-lex’s alleged discriminatory treatment and her termination. Kwan was unable to locate any documents evidencing her medical expenses or demonstrating that she had delayed seeking medical attention for any ailments.
II.
The District Court granted Andalex’s motion for summary judgment and dismissed all of Kwan’s claims.
The District Court dismissed the claims of discrimination and retaliation under Title VII for failure to establish a prima facie case under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The District Court went on to determine that even assuming the plaintiff had met her prima facie burden, Andalex had offered legitimate non-discriminatory reasons for her termination and the plaintiff had failed to produce sufficient evidence to demonstrate that the reasons were a pretext for discrimination or retaliation.
The District Court dismissed Kwan’s claims under the NYSHRL and NYCHRL for the same reasons it dismissed the Title VII claims and dismissed Kwan’s COBRA claim because the plaintiff made no showing that she had been harmed by her lack of COBRA coverage. In response to An-dalex’s motion for summary judgment, Kwan also argued that her complaint stated a claim for hostile work environment. The District Court refused to consider Kwan’s hostile work environment claim because it was first raised in response to the motion for summary judgment.
This appeal followed.
DISCUSSION
I. Hostile Work Environment and Retaliation Claims
We review de novo an award of summary judgment for the claims under Title VII, the NYSHRL, and the NYCHRL. *843 See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir.2010); Dawson v. Bumble & Bumble, 398 F.3d 211, 216-17 (2d Cir.2005). Summary judgment is appropriate where “there is no genuine dispute as to any material fact and the mov-ant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 6(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute of material fact “exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party’s favor.” Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir.2007) (citation omitted). The substantive law governing the case will identify those facts that are material, and “[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Although summary judgment is proper where there is “nothing in the record to support plaintiffs allegations other than plaintiffs own contradictory and incomplete testimony,” Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir.2005), there is a “need for caution about granting summary judgment to an employer in a discrimination case where ... the merits turn on a dispute as to the employer’s intent,” Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir.2008).
A. Hostile Work Environment Claims
Kwan’s complaint does not assert a claim for hostile work environment and Kwan did not raise the prospect of such a claim until her opposition to the motion for summary judgment. The District Court held that because the plaintiff had never asserted a claim of hostile work environment until her brief in opposition to the motion for summary judgment, it would not consider the claim. We agree with the District Court and will not address the merits of that late-asserted claim. See Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir.2006); Syracuse Broad. Corp. v. Newhouse, 236 F.2d 522, 525 (2d Cir.1956) (holding that district court was “justified” in “brushfing] aside” further argument not alleged in complaint but raised for first time in opposition to summary judgment). The dismissal of the hostile work environment claim is therefore affirmed.
B. Retaliation Claims
To prevail on a retaliation claim, “the plaintiff need not prove that her underlying complaint of discrimination had merit,” Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir.2012), .but only that it was motivated by a “good faith, reasonable belief that the underlying employment practice was unlawful,” Reed v. A.W. Laurrence & Co., 95 F.3d 1170, 1178. (2d Cir.1996) (citation and internal quotation marks omitted). 23 The good faith and reasonableness of Kwan’s belief that she was subjected to discrimination are not at issue on this appeal.
Federal and state law retaliation claims are reviewed under the burden-shifting approach of McDonnell Douglas, 411 U.S. at 802-04, 93 S.Ct. 1817. See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir.2010); Dawson, 398 F.3d at 216-17; Reed, 95 F.3d at 1177.[3]
*844 1.
Under the first step of the McDonnell Douglas framework, the plaintiff must establish a prima facie case of retaliation by showing 1) “participation in a protected activity”; 2) the defendant’s knowledge of the protected activity; 3) “an adverse employment action”; and 4) “a causal connection between the protected activity and the adverse employment action.” Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir.2005) (citation and internal quotation marks omitted). The plaintiffs burden of proof as to this first step “has been characterized as ‘minimal’ and ‘de minimis.’ ” Id. (citations omitted).
The District Court erred when it held that the plaintiff failed to satisfy the knowledge and causation prongs of the prima facie case.
With respect to the knowledge prong, the District Court held that the plaintiff could not demonstrate Andalex’s knowledge of her protected activity because Kwan had provided no evidence that Andrew Silverman had knowledge of Kwan’s September 3 conversation with Alex Silverman when Andrew made the decision to terminate her. However, for purposes of a prima facie case, a plaintiff may rely on “general corporate knowledge” of her protected activity to establish the knowledge prong of the prima facie case.[4] Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 116 (2d Cir.2000) (“Neither [the Second Circuit] nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.”) (citations omitted). Here, the plaintiff made her September 3 complaint to Alex Silverman, an officer of the corporation. This complaint was sufficient to impute to Andalex general corporate knowledge' of the plaintiffs protected activity. See Reed, 95 F.3d at 1178 (holding that a plaintiffs complaint to an officer of the company communicated her concerns to the company as a whole for purposes of the knowledge prong of the prima facie case); see also Summa v. Hofstra Univ., 708 F.3d 115, 125-26 (2d Cir.2013). Therefore, Kwan satisfied the knowledge prong of the prima facie case.
This case is a good illustration of why corporate knowledge is sufficient for purposes of a prima facie case of retaliation. If that were not true, a simple denial by a corporate officer that the officer ever communicated the plaintiffs complaint, no matter how reasonable the inference of communication, would prevent the plaintiff from satisfying her prima facie case, de *845 spite the fact that the prima facie case requires only a de minimis showing.
The District Court also held that Kwan had not satisfied the causation prong because she had adduced no facts plausibly suggesting that the September 3 conversation with Alex Silverman was causally related to her termination by Andrew Silverman. However, even without direct evidence of causation, “a plaintiff can indirectly establish a causal connection to support a ... retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action.” Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir.2001) (citation and internal quotation marks omitted); see also Summa, 708 F.3d at 127-128.
The Supreme Court recently held that “Title VII retaliation claims must be proved according to traditional principles of but-for causation,” which “requires proof that the unlawful retaliation would not have occurred in the-absence of the alleged wrongful action or actions of the employer.” Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. -, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013). However, the but-for causation standard does not alter the plaintiffs ability to demonstrate causation at the prima facie stage on summary judgment or at trial indirectly through temporal proximity.
The three-week period from Kwan’s complaint to her termination is sufficiently short to make a prima facie showing of causation indirectly through temporal proximity. See Gorzynski 596 F.3d at 110 (“Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.”) (citations omitted); Gorman-Bakos, 252 F.3d at 554-55. Therefore, Kwan presented a prima facie case for her retaliation claims.
Once the plaintiff has established a pri-ma facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action. United States v. Brennan, 650 F.3d 65, 93 (2d Cir.2011). In this case, the defendant has proffered the plaintiffs poor work performance, bad behavior, and Andalex’s change in business focus as the legitimate non-retaliatory reasons for the plaintiffs termination.
2.
Andalex’s inconsistent and contradictory explanations for the plaintiffs termination, combined with the close temporal proximity between the September 3 conversation and Kwan’s termination, are sufficient to create a genuine dispute of material fact as to whether Kwan’s September 3 complaint of gender discrimination was a but-for cause of the plaintiffs termination.
Under the McDonnell Douglas framework, after the defendant has articulated a. non-retaliatory reason for the employment action, the presumption of retaliation arising from the establishment of the prima facie case drops from the picture. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir.2000). The plaintiff must then come forward with non-retaliatory reason is a mere pretext for retaliation. Id.
The Supreme Court recently held that a plaintiff alleging retaliation in violation of Title VII must show that retaliation was a “but-for” cause of the adverse action, and not simply a “substantial” or “motivating” factor in the employer’s decision. Nassar, 133 S.Ct. at 2526, 2533. *846 However, “but-for” causation does not require proof that retaliation was the only cause of the employer’s action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.[5]
A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer’s proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason. See, e.g., Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 105-07 (2d Cir.2001) (age and gender discrimination); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir.2000) (age discrimination); Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 156-57 (2d Cir.1998) (disability discrimination), superseded by statute on other grounds as stated in Hilton v. Wright, 673 F.3d 120, 128 (2d Cir.2012); EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir.1994) (age discrimination) (collecting cases).
In this case, Andalex offered shifting and somewhat inconsistent explanations for Ewan’s termination. Andalex claimed throughout its Position Statement to the EEOC that Ewan and Burton Garber were both terminated largely because of Andalex’s change in business focus from domestic real estate to international gaming and hospitality. This was a convenient explanation because it undercut any claim of gender or national origin discrimination. However, Marks, Andalex’s CFO and Ewan’s direct supervisor, later testified that Ewan, unlike Garber, was not terminated because of a shift in company focus. Marks’s testimony directly contradicts Andalex’s main representation to the EEOC. *847 Moreover, while Kwan’s poor performance on the Argentina and Mexico projects became critical parts of Andalex’s argument that Kwan had performed poorly, those projects were never even mentioned to the EEOC as reasons for Kwan’s termination. “From such discrepancies a reasonable juror could infer that the explanations given by [Andalex] were pretextual.” Ethan Allen, 44 F.3d at 120; see also Byrnie, 243 F.3d at 106.[6]
Kwan’s evidence of Andalex’s inconsistent explanations for her termination and the very close temporal proximity between her protected conduct and her termination are sufficient to create a triable issue of fact with regard to whether the September 3 complaint was a but-for cause of her termination. Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage. See El Sayed, v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir.2010) (per curiam). However, a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage. See Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir.2001) (“Under some circumstances, retaliatory intent may ... be shown, in conjunction with the plaintiffs prima facie case, by sufficient proof to rebut the employer’s proffered reason for the termination.”); James v. N.Y. Racing Ass’n, 233 F.3d 149, 156-57 (2d Cir. 2000) (“[Evidence satisfying the minimal McDonnell Douglas prima facie case, coupled with evidence of falsity of the employer’s explanation, may or may not be sufficient to sustain a finding of [retaliation]; ... the way to tell whether a plaintiffs case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove”); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 770 (2d Cir.1998) (holding that a strong temporal connection between the plaintiffs complaint and other circumstantial evidence is sufficient to raise an issue of fact with respect to pretext), abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).
Based on the discrepancies between the EEOC statement and subsequent testimony, a reasonable juror could infer that the explanation given by the defendant was pretextual, and that, coupled with the temporal proximity between the complaint and the termination, the September 3 complaint was a but-for cause of Kwan’s termination. Viewing the evidence in the light most favorable to the plaintiff, as required on a motion for summary judgment, there is sufficient evidence to require denial of the summary judgment motion on' the claims for retaliation.[7]
*848 II. COBRA Claim
The plaintiffs final claim is based on Andalex’s alleged failure to provide her with timely notice of her health insurance continuation coverage rights as required under COBRA. The District Court dismissed Kwan’s COBRA claim because there was no evidence that the plaintiff suffered harm from her lack of coverage. Because Kwan has made no showing of bad faith by Andalex or prejudice resulting from the lack of notice, the District Court did not abuse its discretion in dismissing Kwan’s claim for statutory penalties.
We review the District Court’s determination that a plaintiff is not entitled to statutory penalties under 29 U.S.C. § 1132(c)(1) for abuse of discretion. See Demery v. Extebank Deferred Comp. Plan (B), 216 F.3d 283, 290 (2d Cir.2000). COBRA permits a qualifying employee to continue to receive health benefits at the group rate even after the termination of her employment. 29 U.S.C. §§ 1161(a), 1163(2). The statute specifies that “the employer ... must notify the [health plan] administrator ... within. 30 days” of the employee’s termination, id. § 1166(a)(2), and the administrator must then notify the employee of her rights to continuing coverage within 14 days, id. § 1166(a)(4), (c). Under ERISA, of which COBRA is a part, a plan administrator who fails to meet the COBRA notice requirements “may in the court’s discretion be personally liable to such participant or beneficiary in the amount of up to [$110][8] a day from the date of such failure or refusal.... ” id. § 1132(c)(1); see also Deckard v. Interstate Bakeries Corp. (In re Interstate Bakeries Corp.), 704 F.3d 528, 534-37 (8th Cir.2013).[9]
In assessing a claim for statutory penalties under ERISA, a district court should consider various factors, including “bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary.” Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 90 (2d Cir.2001) (quoting Pagovich v. Moskowitz, 865 F.Supp. 130, 137 (S.D.N.Y.1994) (collecting cases)) (internal quotation marks omitted); see also In re Interstate Bakeries Corp., 704 F.3d at 534; De Nicola, 2006 WL 2844384, at *7-10; Chambers v. European Am. Bank & Trust Co., 601 F.Supp. 630, 638-39 (E.D.N.Y.1985) (collecting cases) (“The weight of authority indicates that penalties are not imposed when a plaintiff has failed to demonstrate that his rights were harmed or otherwise prejudiced by the delay in his receipt of the information.”).
Applying these factors, we conclude that the District Court did not abuse its discretion when it held that the plaintiff was not entitled to statutory penalties. Kwan presented no evidence of bad faith or intentional misconduct by Paychex or Andalex. See Devlin, 274 F.3d at 90; In re Interstate Bakeries Corp., 704 F.3d at 537.
Kwan has also failed to demonstrate prejudice resulting from the lack of coverage. By the plaintiffs own account, she *849 incurred medical bills of only a few hundred dollars. Had she elected to receive coverage under COBRA, it is undisputed that she would have had to pay premiums in the range of hundreds or thousands of dollars each month. The plaintiff therefore suffered no monetary loss from her failure to obtain insurance coverage until she obtained new employment. See Partridge v. HIP of Greater N.Y., No. 97 Civ. 0453, 2000 WL 827299, at *6 (S.D.N.Y. June 26, 2000), aff'd, No. 00-7920, 2001 WL 950682 (2d Cir. Aug. 14, 2001) (Summary Order). To the extent Kwan alleges that she would have sought healthcare had she had health insurance, her claim fails because she presented no evidence to support this allegation. See In re Interstate Bakeries Corp., 704 F.3d at 536. Therefore, the District Court acted well within its discretion when it dismissed the claim for statutory penalties because there was no showing of bad faith and Kwan suffered no harm.[10]
CONCLUSION
We have considered all of the arguments of the parties. To the extent not specifically addressed above, they are either moot or without merit. For the reasons explained above, we AFFIRM the judgment of the District Court dismissing all claims, except we VACATE the judgment of the District Court dismissing the retaliation claims. The case is REMANDED for further proceedings consistent with this opinion.

. Although the plaintiff alleged claims of discrimination on the basis of gender and national origin under Title VII, the NYSHRL, and the NYCHRL, those claims have not been pursued on appeal, and will therefore not be discussed in this opinion.

. Andalex has not been consistent in its explanation of whether Andrew Silverman acted alone in deciding to terminate the plaintiff. Andalex’s statement to the Equal Employment Opportunity Commission ("EEOC”) indicates that Andrew Silverman and Steven Marks made the decision to terminate Kwan together. At another point, the EEOC statement says that "it was Mr. Marksfs] decision, approved by Andrew Silverman” to terminate Kwan. Alex Silverman testified that Andrew Silverman made the decision to terminate the plaintiff. Amy Piecoro testified that the decision to terminate Kwan was made by Andrew Silverman, Steven Marks, and William Ko-gan, Andalex’s General Counsel.

. The plaintiff also brought a claim for retaliation under the NYCHRL. It is' unclear whether and to what extent the McDonnell Douglas framework has been modified for claims under the NYCHRL. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 n. 8, 112 (2d Cir.2013). It is unnecessary to resolve that issue in this case *844 because to the extent that the defendant has failed to show it is entitled to summary judgment under McDonnell Douglas, it would not be entitled to summary judgment under the more expansive standard of the NYCHRL. See Williams v. Regus Mgmt. Grp., LLC, 836 F.Supp.2d 159, 181 (S.D.N.Y.2011).

. To the extent Andalex argues that Kwan must demonstrate communication of Kwan’s complaint from Alex Silverman to Andrew Silverman, Andalex confuses the "knowledge” and the causation prongs of the prima facie case requirement. Kwan does not argue that general corporate knowledge demonstrates causation, but rather argues that it demonstrates knowledge. Furthermore, while Andalex is correct that Kwan cannot satisfy the causation prong through mere corporate knowledge, as discussed below, Kwan demonstrates causation indirectly by the temporal proximity between her complaint and her termination, and does not rely on "general corporate knowledge” for the causation prong of the prima facie case. It should, however, be noted that Andrew Silverman testified that he consulted with his brother before terminating the plaintiff and Alex Silverman testified that he and Andrew had discussed terminating the plaintiff.

. Prior to the Supreme Court’s decision in Nassar, in order to demonstrate pretext, a plaintiff was only required to demonstrate that a retaliatory motive was "a substantial or motivating factor behind the adverse action[,]” Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir.2001) (internal quotation marks and citations omitted), rather than a "but — for” cause of the adverse action. In Nassar, the Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but — for causation," and "[t]his requires 'proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.” Nassar, 133 S.Ct. at 2533. However, a plaintiff’s injury can have multiple "but — for” causes, each one of which may be sufficient to support liability. See Fowler V. Harper et al., 4 Harper, James and Gray on Torts § 20.2, at 100-101 (3d ed.2007) ("Probably it cannot be said of any event that it has a single causal antecedent ....”) (collecting cases); W. Page Keeton et al., Prosser and Keeton on Torts § 41, at 264-66 (5th ed.1984). Requiring proof that a prohibited consideration was a "but-for” cause of an adverse action does not equate to a burden to show that such consideration was the "sole” cause. See, e.g., Fagan v. U.S. Carpet Installation, Inc., 770 F.Supp.2d 490, 496 (E.D.N.Y. 2011) (explaining that under the Age Discrimination in Employment Act “[t]he condition that a plaintiff’s age must be the ‘but for’ cause of the adverse employment action is not equivalent to a requirement that age was the employer’s only consideration, but rather that the adverse employment actions would not have occurred without it.”) (citation omitted).
In this case, the parties have put forward several alleged causes of the plaintiff's termination: retaliation, unsuitability of skills, poor performance, and inappropriate behavior. The determination of whether retaliation was a “but — for” cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination' that there is no genuine dispute as to any material fact. A jury should eventually determine whether the plaintiff has proved by a preponderance of the evidence that she did in fact complain about discrimination and that she would not have been terminated if she had not complained about discrimination.

. The District Court addressed the inconsistencies in the defendant’s stated reasons for the plaintiff's termination. The District Court noted Marks's denial that the shift in Anda-lex's business was a basis for the plaintiff's termination. The District Court found that Marks’s statement was not inconsistent with Andrew Silverman’s testimony that while the change in business was a factor that influenced his decision, the plaintiff’s termination was due primarily to work performance issues. The District Court found these to be different but consistent explanations. This ignores that the thrust of the defendant's position before the EEOC was that the plaintiff was terminated because of a shift in the defendant's business, a rationale that was disowned by Marks, the plaintiff’s direct supervisor.

. Because the plaintiff’s claims survive under the Nassar “but-for” standard, we do not decide whether the NYSHRL claim is affected by Nassar, which by its terms dealt only with retaliation in violation of Title VII.

. The statute provides for a civil penalty of up to $100 per day; however that amount has been increased to $110 per day. See Adjusted Civil Penalty Under Section 502(c)(1), 29 C.F.R. § 2575.502c-1; De Nicola v. Adelphi Acad., No. CV-05-4231, 2006 WL 2844384, at *7 (E.D.N.Y. Sept. 29, 2006).

. We note that the parties have not raised the issue of whether Kwan is barred from recovery against Andalex because statutory penalties are only available against the plan administrator. See 29 U.S.C. § 1132(c)(1). We therefore decline to address that issue.

. Kwan was also not entitled to actual damages. The only damages that she could recover are based on the several hundred dollars of medical bills she allegedly incurred: However, “[t]o be eligible to collect the [ unreim-bursed medical bills], the plaintiff would need to pay the COBRA premium payments." Rinaldo v. Grand Union Co., No. CV-89-3850, 1995 WL 116418, at *2 (E.D.N.Y. Mar. 8, 1995) (citing 29 U.S.C. § 1162(2)(C)). “Where, as here, [the] plaintiff is in a better position not having exercised [her] rights’ 'Under COBRA, there can be no actual damages.” Id.; see also Soliman v. Shark Inc., No. 00 Civ. 9049, 2004 WL 1672458, at *5 (S.D.N.Y. July 27, 2004).