21-668-cv
Abromavage v. Deutsche Bank Sec. Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of September, two thousand twenty-two.

PRESENT:
>
> **ROSEMARY S. POOLER,**
> **ROBERT D. SACK**
> **MICHAEL H. PARK,**
> *Circuit Judges.*

---

NEIL ABROMAVAGE,

*Plaintiff-Appellant*,

v.                                                            21-668

DEUTSCHE BANK SECURITIES INC.,
JEFFREY BUNZEL, MARK HANTHO,

*Defendants-Appellees.*\*

---

FOR PLAINTIFF-APPELLANT:          ANDREW GOODSTADT, Goodstadt Law Group, PLLC, Garden City, NY.

FOR DEFENDANTS-APPELLEES:          CAMERON ALEXANDER SMITH, Seyfarth Shaw LLP, New York, NY (John P. Phillips, Seyfarth Shaw LLP, Houston, TX, *on the brief*).

---

\* The Clerk of Court is respectfully directed to amend the caption accordingly.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff Neil Abromavage worked for Defendant Deutsche Bank Securities Inc. ("DBSI") as co-head of the Financial Institutions Group within Equity Capital Markets ("FIG ECM") from 2006 to 2015 and sole head of FIG ECM from January 2016 until his termination in August 2016. Abromavage reported to Defendant Jeffrey Bunzel, the head of ECM Americas, who in turn reported to Defendant Mark Hantho, the Global Head of ECM. In 2015, DBSI investigated Jason Gurandiano, one of its employees, for offensive comments towards Indian employees, among other allegations. Abromavage was interviewed for the internal investigation and reported that he personally witnessed Gurandiano refer to three bankers of South Asian descent using offensive slurs and heard about other such instances from coworkers. Gurandiano was terminated on July 27, 2015.

Abromavage alleges that he suffered seven adverse employment actions after his participation in the Gurandiano investigation: (1) reallocation of revenue that had previously been attributed to him; (2) denial of his request to transfer to a new position; (3) reassignment of his clients; (4) denial of funding to attend conferences; (5) negative performance review; (6) zero bonus in 2015; and (7) termination. He sued Defendants alleging unlawful retaliation in violation of Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), and also sued Bunzel and Hantho for aiding and abetting violations of the NYSHRL and the NYCHRL. The district court granted summary judgment for Defendants on the Title VII and NYSHRL claims, concluding that Abromavage failed to show that

2

Defendants' reasons for the adverse actions were pretextual or that retaliation was their but-for cause. The district court declined to exercise supplemental jurisdiction over the NYCHRL claims and dismissed them without prejudice. Abromavage timely appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review the district court's grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Ashley v. City of N.Y.*, 992 F.3d 128, 136 (2d Cir. 2021). "The movant must show that there is no genuine issue as to any material facts, and that they are entitled to judgment as a matter of law." *Id.*

"[T]he plaintiff bears the initial burden to establish a prima facie case of retaliation." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015). "Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). And if the employer does so, "[t]he plaintiff must then come forward with [evidence that the employer's] non-retaliatory reason is a mere pretext for retaliation." *Id.* The plaintiff also "must show that retaliation was a 'but-for' cause of the adverse action." *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). Title VII and NYSHRL retaliation claims are analyzed under the same standards. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).

Even assuming Abromavage established a prima facie case of retaliation, we agree with the district court's conclusion that he failed to demonstrate that Defendants' reasons for the adverse actions were pretextual or that retaliation was a but-for cause of the adverse actions. On appeal, Abromavage focuses primarily on arguing that Defendants' explanations for the zero-bonus and

3

termination decisions were pretextual. Defendants explained that those decisions were due to a combination of Abromavage's declining revenue, his high base salary, FIG ECM's declining revenue, and directives from the Head of Investment Banking, Jeffrey Urwin, to give zero bonuses to 20% of the ECM group and to reduce ECM's headcount by 20%. Abromavage does not seriously contest most of Defendants' reasons, focusing instead primarily on the Urwin directives. Abromavage argues that the fact that he was the only Managing Director in ECM Americas to receive a zero bonus and the only Managing Director to be terminated shows that the directives did not exist or that compliance with them was not mandatory. But five out of thirty-three— about 15%—of ECM Managing Directors worldwide received zero bonuses in 2015, which is significant given Hantho's testimony that zero bonuses were unprecedented. And in addition to the fact that three other ECM employees were terminated with Abromavage, Defendants produced documentary evidence of the headcount directive in the form of a June 2016 email stating, "We will be discussing a very aggressive headcount reduction tomorrow" and "[s]ome additional 'planned' attrition more recently has been focused on [Managing Directors and Directors]." Joint App'x at 1535. We are thus unpersuaded by Abromavage's argument that Urwin's directives were pretext for retaliation.[1]

---

[1] We also reject Abromavage's various other arguments regarding the zero-bonus directive. There was no inconsistency between Hantho's explanation of the zero-bonus decision to Abromavage in February 2016 and during litigation. Abromavage's secret recording of the conversation reveals that Hantho mentioned ECM's reduced bonus pool and Abromavage's high base salary as reasons for the decision, which is consistent with the reasons given in litigation. Abromavage identifies no reason why Hantho was obligated to reveal the existence of the directive to him at that time. There is also no inconsistency between Hantho's and Bunzel's explanations. Contrary to Abromavage's argument, Bunzel did reference the directive as part of the explanation for the zero-bonus decision in both his declaration and his deposition. And there is no contradiction between Hantho's testimony that zero bonuses were unprecedented and Bunzel's testimony that he did not recall "anything out of the ordinary" "in terms of process" for giving zero bonus. Joint App'x at 956. Abromavage presented no evidence that the process for awarding bonuses changed in 2015 or that a directive from an executive like Urwin about bonuses was out of the ordinary. Finally, the directive did not conflict with DBSI's policy requiring DBSI to use "both quantitative and qualitative measures to assess employees' performance and, by extension, determine

4

Abromavage's arguments that the explanations for the remaining adverse actions were pretext for retaliation are also unavailing. For most of the adverse actions, Abromavage provides no evidence of pretext other than temporal proximity between the protected activity and the adverse action. But "[w]e have long held that 'temporal proximity' between a protected complaint and an adverse employment action 'is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext.'" *Ya-Chen Chen*, 805 F.3d at 72 (quoting *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per curiam)). And he fails to substantiate his allegations of contradictions and inconsistencies. For instance, Abromavage argues that his negative performance review for 2015 was inconsistent with the Individual Documentation Form ("IDF") that Bunzel submitted to BaFin, a German regulator, because the IDF "contained *no* negative information." Appellant's Br. at 23. But the IDF not only notes Abromavage's drop in revenue, it also states that he "[i]s not consistently demonstrating the Values and Beliefs" of DBSI because "he needs to continue to push to develop stronger partnerships with bankers in other teams and regions for the benefit of the firm's clients." Joint App'x at 1328. This criticism is substantially similar to Bunzel's critique in Abromavage's 2015 performance review that Abromavage had "partnering issues both inside and outside ECM." Joint App'x at 141. We thus affirm the district court's conclusion that Abromavage failed to demonstrate that Defendants' explanations were pretext for retaliation.

We also agree with the district court's conclusion that Abromavage failed to demonstrate that retaliation was a but-for cause of the adverse actions. Although a plaintiff may show but-for

appropriate levels of discretionary Variable Compensation." *Id.* at 1350. The policy is clear that variable compensation is "generally discretionary" and based not only on individual performance but also on "Bank performance" and "Divisional contributions." *Id.* at 1347, 1350. And with regard to performance, there is no dispute that Abromavage's revenue drastically declined in 2015.

5

causation by "demonstrating weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's proffered reasons for the adverse actions, Abromavage has failed to do so, as explained above. *Zann Kwan*, 737 F.3d at 846. We are also unpersuaded by Abromavage's argument that Hantho's and Bunzel's history of protecting Gurandiano demonstrates but-for causation.[2] Abromavage provides no evidence that Hantho or Bunzel protected Gurandiano from consequences. Indeed, Hantho supported Gurandiano's termination. At worst, Hantho and Bunzel relied on Gurandiano's supervisors to handle any disciplinary action rather than disciplining Gurandiano themselves, which, even if true, would be insufficient to show but-for causation. We thus affirm the district court's grant of summary judgment on Abromavage's Title VII and NYSHRL claims.[3]

*　　*　　*

---

[2] Abromavage alleges that in addition to Hantho and Bunzel, John Eydenberg, Gurandiano's indirect supervisor, protected him. Jeffrey Mortara, the other FIG ECM co-head, declared that Eydenberg stated, "You should assume I know everything" about "what was said in the [Gurandiano] investigation," which Mortara interpreted as a potential threat. Joint App'x at 1529. Abromavage states that this is relevant because Eydenberg was involved in Abromavage's planned move to FIG coverage. Abromavage, however, does not provide any evidence that Eydenberg was involved in the FIG coverage move, nor does he provide evidence that Eydenberg knew of his protected activity at this time. Thus, even assuming Eydenberg had a retaliatory motive toward Mortara, Abromavage does not provide sufficient evidence showing that it had any effect on him.

[3] We also affirm the district court's grant of summary judgment on Abromavage's claim that Hantho and Bunzel aided and abetted NYSHRL violations because there is no underlying NYSHRL violation. *See Feingold v. New York*, 366 F.3d 138, 157–158 (2d Cir. 2004) (explaining that aiding and abetting liability under the NYSHRL requires "actual participat[ion]" in the unlawful conduct).

We have considered all of Abromavage's remaining arguments and find them to be without merit.[4] Accordingly, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] Because we affirm the district court's grant of summary judgment on Abromavage's federal-law claims, we also conclude that the district court did not abuse its discretion by declining supplemental jurisdiction over his state-law claims and dismissing them without prejudice. *See Valencia* ex rel. *Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).