23-1311
*Golden v. Syracuse Regional Airport Authority*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of September, two thousand twenty-four.

PRESENT:

> DENNY CHIN,
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

RODERICK GOLDEN,

*Plaintiff-Appellant,*

v.                                                                    No. 23-1311

SYRACUSE REGIONAL AIRPORT AUTHORITY,

*Defendant-Appellee,*

DEBBIE MARSHALL, Head of Human Resources, DENNIS MATHERS, Head Supervisor, PETER RYAN, Assistant Supervisor, ANDREW BAKER, JOHN CARNEY,

*Defendants.*[*]

_____

**For Plaintiff-Appellant:** Roderick Golden, *pro se*, Syracuse, NY.

**For Defendant-Appellee:** John T. McCann, Hancock Estabrook, LLP, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 31, 2023 judgment of the district court is **AFFIRMED**.

Roderick Golden appeals from the district court's grant of summary judgment in favor of his former employer, the Syracuse Regional Airport Authority (the "SRAA"), on Golden's claims for race discrimination and retaliation

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

2

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

We review a district court's grant of summary judgment *de novo*. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 258 (2d Cir. 2023). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). While we "liberally construe pleadings and briefs submitted by *pro se* litigants," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted), even *pro se* litigants must do more than offer "purely conclusory allegations of discrimination, absent any concrete particulars," *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

## I. Title VII Discrimination

When a Title VII discrimination claim is based on circumstantial evidence, we apply the familiar *McDonnell Douglas* burden-shifting framework to determine whether the plaintiff has shown sufficient evidence to survive summary judgment. *See Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). To start, the plaintiff must "establish a

prima facie case of discrimination by showing that (1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Id.* at 570 (internal quotation marks omitted).

If the plaintiff has established his prima facie case, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse action." *Id.* (internal quotation marks omitted). If the employer articulates such a reason, then the burden shifts back to the plaintiff to show at the third step either that "the employer's stated justification for its adverse action was nothing but a pretext for discrimination," or that, "even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action." *Id.* at 578.

The district court granted summary judgment in favor of SRAA based upon Golden's failure to meet his burden at the first step, concluding that he had not presented evidence from which a reasonable jury could find a prima facie case of racial discrimination. We agree.

Accounting for Golden's *pro se* status, the district court construed his briefs and pleadings as asserting two adverse employment actions: the denial of his bid

4

for a shift assignment and his subsequent termination after he threatened to assault a co-worker. *See* Golden App'x at 25–26. With respect to the former, Golden asserted that he was deprived of his "bid" for a preferred work shift when a co-worker was selected ahead of him for that slot. But this argument ignores the undisputed record, which reveals that shifts were assigned based on who was more senior – which his co-worker was. In light of this, Golden presented nothing "more than conclusory allegations" that the denial of his preferred shift was on account of his race. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

Golden fares no better with respect to his termination claim. Once again, he offers no evidence reflecting that his discharge was based on racial discrimination. And even if we were to assume that Golden had made out a prima facie case of discrimination related to his termination, his claim would still fail because SRAA offered a legitimate, nondiscriminatory reason for his firing that Golden did not rebut. The record is clear that Golden made threats of physical violence against co-worker Josh Cruz to another employee, stating, among other things, that he was "gonna break [Cruz's] back if he step[s] out [of] line." Dist. Ct. Doc. No. 62 at 274.

Golden seems to suggest that he could not have been fired, even if he had made such threats, because there was no workplace violence prevention policy in

5

place at the time of his alleged misconduct. But this argument is belied by the record. First, Golden signed an acknowledgment of the City of Syracuse's workplace violence prevention policy at the time of his hiring in July 2019. *See* Dist. Ct. Doc. No. 68-5 at 2–3. Second, he admitted that an employee could be terminated under the City's policy for making threats. Dist. Ct. Doc. No. 62 at 189–90. Third, SRAA also had a workplace violence prevention policy in place at the time of the incident, which was included in the SRAA Employee Handbook that Golden himself provided as part of his motion for summary judgment. *See id.* at 253–63. While it is not clear which policy applied to Golden as a "transferred employee," there can be no dispute that his threats against Cruz violated whichever policy governed Golden's conduct in February 2020. *See* Dist. Ct. Doc. No. 68-1 at 5. Finally, regardless of whether a specific policy was in place, "[w]e have held generally that insubordination and conduct that disrupts the workplace are legitimate reasons for firing an employee." *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000) (internal quotation marks omitted); *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567–68 (2d Cir. 2000) (Sotomayor, J.) (upholding a grant of summary judgment on a discrimination claim arising from an employee's termination after an altercation with a co-worker).

6

Simply put, even if we assume Golden established a prima facie discrimination case, SRAA advanced a legitimate, nondiscriminatory reason for terminating Golden's employment. It then fell to Golden to show that this reason was pretext or that race was a motivating factor in his firing. Because Golden offered no evidence on either front, we cannot say that the district court erred in granting summary judgment to SRAA on Golden's claim of workplace discrimination.

## II. Title VII Retaliation

"Title VII prohibits employers from retaliating against any employee because that individual has opposed any practice made unlawful by Title VII." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (alterations and internal quotation marks omitted). Title VII retaliation claims are analyzed under a modified version of the *McDonnell Douglas* burden-shifting framework. *See id.* At the first step, the plaintiff bears the "burden to establish a prima facie case of retaliation by offering evidence that [he] participated in a protected activity, suffered an adverse employment action, and that there was a causal connection between [his] engaging in the protected activity and the adverse employment action." *Id.* (internal quotation marks omitted). The burden then shifts at step two

7

to the employer to "articulat[e] a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (internal quotation marks omitted). At the third step, "the presumption of retaliation dissipates, and the plaintiff must prove that the desire to retaliate was [a] but-for cause of the challenged employment action." *Id.* (citation and internal quotation marks omitted); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (holding that a plaintiff making a Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"). "'[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action"; it requires simply "that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

At step one, SRAA concedes that Golden engaged in a protected activity by filing a complaint after allegedly being called a racial epithet by a co-worker on January 3, 2020. There is likewise no dispute that Golden ultimately suffered an adverse employment action when he was fired on February 18, 2020. The central question before the district court, and now on appeal, is whether there was a causal connection between the protected activity and adverse action. We have held that

8

temporal proximity of five months or less supports the causation necessary for a prima facie claim of retaliation. *See id.* at 845; *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). And while SRAA argues that any inference of causation was broken by the intervening event of Golden allegedly threatening to harm Cruz, *see Gubitosi v. Kapica*, 154 F.3d 30, 33 (2d Cir. 1998) (declining to draw an inference of causation from temporal proximity when the plaintiff engaged in misconduct in the intervening period), we need not linger over whether Golden's threats are properly considered at step one or step two of the *McDonnell Douglas* framework, since the result is the same.

Even assuming that Golden established a prima facie case of retaliation, SRAA articulated a legitimate, non-retaliatory reason for his termination: Golden's alleged threat to harm Cruz. The burden therefore shifted back to Golden to prove that retaliation was a but-for cause of his termination. But beyond bald assertions, Golden offered no evidence that he would not have been fired "in the absence of the retaliatory motive." *Zann Kwan*, 737 F.3d at 846. Instead, the record reflects that SRAA had already harbored concerns regarding Golden's previous history of assault and making verbal threats, which is why they "decided to give [him] a chance at employment" on a probationary basis. *See* Dist. Ct. Doc.

No. 68-1 at 6.  And nothing in the record suggests that Golden lost his position due to a retaliatory motive on SRAA's part, rather than Golden's "threat of physical harm made against Josh Cruz."  *Id.*  We therefore conclude that the district court did not err in granting summary judgment to SRAA on Golden's retaliation claims.

## III.    Arguments Not Raised Below

On appeal, Golden raises a number of arguments that were not raised below in either his complaint or his motion for partial summary judgment.  For example, he now contends that the district court erroneously denied his claim "for unpaid New York Unemployment Insurance benefits" and that SRAA's termination procedure "was at odds with the Constitution of the United States[,] with applicable New York law, . . . and with traditional notions of fundamental due process, fair play[,] and substantial justice."  Golden Br. at 2.  But we will not consider an argument that an appellant has not presented to the district court, even if the appellant is proceeding *pro se*.  *See Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).[1]

---

[1] The district court also considered whether Golden had raised a hostile work environment claim. *See* Golden App'x at 26–30.  But Golden makes only a passing reference to a "hostile work environment" in his brief and does not challenge the district court's grant of summary judgment to SRAA on this claim.  Golden Br. at 3.  "Although we construe *pro se* filings liberally, we need

* * *

We have considered Golden's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

not manufacture claims of error for an appellant proceeding *pro se*." *Tripathy v. McKoy*, 103 F.4th 106, 118 (2d Cir. 2024) (internal quotation marks omitted).