18-687-cv
*D'Andrea v. Nielsen*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand nineteen.

PRESENT:   JOHN M. WALKER, JR.,
                      DENNY CHIN,
                      RICHARD J. SULLIVAN,
                              *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LEONARDO D'ANDREA,

                      *Plaintiff-Appellant*,

                      v.                                                          18-687-cv

KIRSTJEN M. NIELSEN, Secretary, Department of Homeland Security,

                      *Defendant-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:           ALAN E. SCHOENFELD (Sharon Cohen
                                                            Levin, Jack Zarin-Rosenfeld, Swapna Maruri,
                                                            Michael J. Morillo, *on the brief*), Wilmer Cutler
                                                            Pickering Hale and Dorr LLP, New York, New
                                                            York.

FOR DEFENDANT-APPELLEE:           STEPHEN CHA-KIM, Assistant United States
                                                            Attorney (Christopher Connolly, Assistant
                                                            United States Attorney, *on the brief*), *for*

Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Hellerstein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **VACATED IN PART**, and the matter is **REMANDED** for further proceedings.

Plaintiff-appellant Leonardo D'Andrea, a Senior Special Agent in the Department of Homeland Security ("DHS"), appeals the district court's January 12, 2018 judgment granting summary judgment in favor of defendant-appellee Elaine Duke, the then-Acting Secretary of DHS, on D'Andrea's retaliation and hostile work environment claims against DHS under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e *et seq.* The district court explained its reasoning in an order entered January 11, 2018. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

The following facts are viewed in the light most favorable to D'Andrea. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013).[1] Since

---

[1] Some of these facts are taken from D'Andrea's second amended verified complaint. A verified pleading that contains "allegations on the basis of the plaintiff's personal knowledge,

- 2 -

2001, D'Andrea has been employed by DHS and its predecessor agency. In 2008, D'Andrea was a witness in two employment discrimination proceedings brought by his coworkers against DHS. On May 5, 2008, D'Andrea testified in court in one of the proceedings. A few months later, in July or August 2008, D'Andrea participated in another coworker's action by submitting answers to a written questionnaire.

D'Andrea alleges that DHS engaged in two acts of retaliation against him because he participated in these actions. First, in March 2010, DHS removed D'Andrea as a case agent on an investigation that he initiated and developed. Second, on April 4, 2010, DHS suspended D'Andrea for six days because of an April 2007 incident at the John F. Kennedy International Airport ("JFK Airport") in which he drew his firearm on two civilians.

In addition, D'Andrea alleges that DHS created a hostile work environment by: passing him over for the position of acting supervisor in favor of a more junior agent; failing to assist D'Andrea after he reported hostile treatment by his then-supervisor Thomas Mulhall; suspending him for six days for the JFK Airport incident; suspending him for twelve days for taking leave without permission; assigning a parking spot to a more junior agent that should have been assigned to him

---

and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

based on seniority; mandating he work six calendar days in a row; and altering his work schedule without consultation or reasonable advance notice.

On February 22, 2017, D'Andrea filed his second amended complaint, alleging that DHS violated Title VII by retaliating against him and creating a hostile work environment. On January 11, 2018, the district court granted summary judgment in favor of DHS, dismissing the second amended complaint. Judgment was entered January 12, 2018. This appeal followed.

### STANDARD OF REVIEW

"We review *de novo* the district court's grant of summary judgment, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in [his] favor." *Mihalik*, 715 F.3d at 108. Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Even in the discrimination context, . . . a plaintiff must provide more than conclusory allegations . . . and show more than some metaphysical doubt as to the material facts." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted).

### DISCUSSION

This appeal presents two issues: whether the district court properly granted summary judgment as to (1) the retaliation claim and (2) the hostile work environment claim. We analyze each issue in turn.

## I.      Retaliation

### A.      *Applicable Law*

Title VII retaliation claims are generally reviewed under the three-step, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). First, the plaintiff must establish a prima facie case of retaliation by showing: (1) he participated in a protected activity; (2) the defendant knew of the protected activity; (3) there was "an adverse employment action"; and (4) there was "a causal connection between the protected activity and the adverse employment action." *Id.* at 844 (internal quotation marks omitted). The plaintiff has the burden of proof at this step, but the burden is "minimal." *Id.* (internal quotation marks omitted).

Second, if the plaintiff establishes a prima facie case, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Id.* at 845. Lastly, if the defendant proffers a legitimate, non-retaliatory reason for the adverse action, the burden shifts back to the plaintiff to show that the defendant's reason is "a mere pretext for retaliation." *Id.* The plaintiff also "must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348 (2013)). This but-for reason need not be the only cause for the

employer's action; however, the plaintiff must show that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 846.

"The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff," *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (alteration omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)), and on summary judgment, "the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited [retaliation] occurred," *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000).

**B.** *Application*

D'Andrea argues that DHS retaliated against him for participating in his coworkers' employment actions by (1) suspending him for six days and (2) removing him as a case agent. D'Andrea challenges the district court's conclusion that he failed to make out a prima facie case of retaliation, and that he failed to show that DHS's reasons for its actions were pretextual.

Here, D'Andrea has failed to establish a prima facie case because he has not presented sufficient evidence to permit a jury to find a causal connection between his protected activity and his suspension and removal. Causation can be proven (1) directly "through evidence of retaliatory animus directed against the plaintiff by the defendant"; or (2) indirectly either (a) "by showing that the protected activity was

followed closely by discriminatory treatment," or (b) "through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). D'Andrea has not provided evidence of retaliatory animus or non-speculative evidence that his fellow employees were treated differently for engaging in similar conduct.

Moreover, causation cannot be inferred from the temporal relationship of D'Andrea's suspension and removal and his protected activity. While we have declined to draw "a bright line to define the outer limits beyond which" temporal proximity may be established, we have generally held that causation can only be inferred after the passage of a few weeks or months, *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases), and have held that a delay of more than a year is fatal to a showing of causation, *see, e.g.*, *Cortes v. MTA New York City Transit*, 802 F.3d 226, 233 (2d Cir. 2015) (refusing to infer causation based on 14-month gap); *Burkybile v. Bd. of Educ. of the Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005) (same based on a delay of more than a year). Here, D'Andrea engaged in protected activity in May 2008 and July or August 2008. D'Andrea was not removed as a case agent until March 2010, and he was not suspended until April 2010. Because nearly two years passed between D'Andrea's protected activity and DHS's adverse actions, we cannot reasonably infer a causal nexus and thus his prima facie case fails.

Even assuming D'Andrea met his minimal burden of establishing a prima facie case of retaliation, as required under *McDonnell Douglas*, D'Andrea's retaliation claim still fails. DHS has articulated "legitimate, non-discriminatory reason[s]" for suspending D'Andrea (the JFK Airport incident) and for removing D'Andrea as a case agent (his late submission of investigation reports). We therefore turn to the ultimate question of whether D'Andrea has adduced sufficient evidence from which a reasonable factfinder could conclude that he was retaliated against *because of* his protected activity.

We hold that D'Andrea has failed to present evidence from which a reasonable jury could conclude either that DHS's reasons were pretextual and that discriminatory retaliation occurred or that any retaliation was the "but-for" cause of his suspension and removal. *Nassar*, 570 U.S. at 360; *Gordon*, 232 F.3d at 117-18. DHS suspended D'Andrea for his April 2007 actions at the JFK Airport. D'Andrea argues that DHS's reason for his suspension is pretextual because he claims the investigation into the JFK Airport incident was flawed for not interviewing "key witnesses" and "picked up steam only when it became clear that D'Andrea was going to testify against [DHS]." Appellant's Br. at 22-23. It is undisputed, however, that D'Andrea drew his weapon on two civilians and that the investigation of the incident included interviews of at least six witnesses, including four eyewitnesses, as well as interviews of, and a written submission by, D'Andrea. Nor was the investigation completely "dormant" prior to April 2008, as D'Andrea alleges. The matter was referred for administrative

- 8 -

inquiry in April 2007, and DHS formally assigned agents to investigate in September 2007.  On November 27, 2007, the investigators interviewed D'Andrea about the incident.  Thus, the investigation was well underway at the time D'Andrea engaged in protected activity.

D'Andrea argues that his direct supervisor, Steven Yagoda, and four other agents with "valuable contemporaneous knowledge of [his] conduct," should have been interviewed.  Appellant's Br. at 23.[2]  Aside from Yagoda, none of the witnesses submitted an affidavit to support D'Andrea's statements.  Moreover, while Yagoda submitted an affidavit that "[t]here was no improper use of force," App'x. at 1278, neither he nor any of the other witnesses identified by D'Andrea had personal knowledge of the incident because they were not present at JFK Airport at that time, *see Patterson*, 375 F.3d at 219 ("Affidavits submitted . . . in opposition to the summary judgment motion must be made on personal knowledge . . . ." (internal quotation marks omitted)).  D'Andrea, therefore, merely speculates that his witnesses would have provided exculpatory evidence.  *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere . . . speculation, but instead must offer some hard evidence showing that its version of the events is not wholly

---

[2]      The other individuals D'Andrea believes should have been interviewed include: Acting Group Supervisor Donald Swiatocha, Acting Assistant Special Agent-in-Charge ("SAC") Raymond Barrett, Deputy SAC Mona Forman, and Acting Deputy SAC James Modico.  SAC Modico, however, was in fact interviewed on May 9, 2008.

fanciful."). Furthermore, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan*, 737 F.3d at 847.

In addition, D'Andrea argues that DHS's reason for removing him as a case agent -- *i.e.*, because his reports of investigation were late -- is pretextual because (1) there is a dispute as to whether he violated a DHS policy; (2) he was never reprimanded and never received a negative performance review before he was removed; and (3) no other employees were removed for filing late reports of investigation. D'Andrea admitted, however, that two supervisors had warned him about the timeliness of his reports of investigation, including multiple warnings for a case that started in September 2009 -- *i.e.*, the case from which he was removed. D'Andrea, moreover, admitted that he and his entire unit were on notice about submitting reports because of criticism regarding the agency's practices for reports of investigation by the United States Attorney's Office. In addition, while D'Andrea argues he was treated differently, he provides no evidence aside from his own speculative statements that he was in fact treated differently. *See D'Amico*, 132 F.3d at 149. D'Andrea, therefore, has failed to provide evidence that his removal as a case agent "would not have occurred in the absence of the retaliatory motive." *Zann Kwan*, 737 F.3d at 846; *see also Hicks*, 509 U.S. at 515 ("[A] reason cannot be proved to be 'a

pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that [retaliation] was the real reason." (internal quotation marks omitted)).

Accordingly, we affirm dismissal of this claim.

## II.     Hostile Work Environment

We understand D'Andrea to argue that DHS created a hostile work environment in retaliation against him because he engaged in protected conduct. The question is whether a plaintiff may assert an independent hostile work environment claim alleging animus based on protected activity (as opposed to animus based on membership in a protected class, *see* 42 U.S.C. § 2000e-2), or whether the acts that would formulate such a claim are part and parcel of the adverse employment action element of a traditional retaliation claim, *see* 42 U.S.C. § 2000e-3(a).

The parties have not briefed this issue, and the district court did not discuss D'Andrea's hostile work environment claim at all. We, therefore, conclude that the claim is better addressed by the district court in the first instance. *See United States v. Gomez*, 877 F.3d 76, 92 (2d Cir. 2017) ("In general, a federal appellate court does not consider an issue not passed on below." (internal quotation marks omitted)). Accordingly, we remand this claim pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), for the district court to answer the following questions:

> 1.     Whether there is an independent claim for a hostile work environment under 42 U.S.C. § 2000e-2 based on retaliatory-animus toward a plaintiff's protected activity; and

- 11 -

2.	If so, whether the evidence adduced at summary judgment in this case was sufficient for a reasonable jury to find that D'Andrea was subject to a hostile work environment based on his protected activity.

We request that the district court address these issues as soon as practicable, and that once the district court has decided these issues on remand, the parties promptly notify the clerk of this Court, whereupon jurisdiction will be restored to this Court and to this panel.

\* \* \*

Accordingly, we **AFFIRM IN PART**, **VACATE IN PART**, and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

- 12 -