| **Callahan v City of New York** |
| --- |
| 2024 NY Slip Op 34259(U) |
| November 30, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 160680/2022 |
| Judge: J. Machelle Sweeting |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. J. MACHELLE SWEETING** | **PART** 62 |
| | *Justice* | |

-------------------------------------------------------------------------------X

JASON CALLAHAN,

                            Plaintiff,

                - v -

THE CITY OF NEW YORK, and NEW YORK
CITY POLICE DEPARTMENT LIEUTENANT NOE
CAMPOS,

                        Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 160680/2022 |
| **MOTION DATE** | 09/14/2023, 09/29/2023 |
| **MOTION SEQ. NO.** | 003 004 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 34, 35, 36, 37, 38, 39, 40, 41, 46, 48, 49

were read on this motion to/for                     DISMISS           .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 42, 43, 44, 45, 47, 50, 51

were read on this motion to/for                     DISMISS           .

Motion Sequence Numbers 003 and 004 are hereby consolidated for disposition.

This is an action asserting claims for, *inter alia*, race discrimination under the New York State Human Rights Law ("State HRL") (Executive Law § 296) and the New York City Human Rights Law ("City HRL") (Administrative Code of City of NY § 8-107). In Motion Sequence Number 003, defendant the City of New York ("the City") moves, pursuant to CPLR 3211 (a) (1), (a) (5), and (a) (7), to dismiss the amended complaint insofar as asserted against it. In Motion Sequence Number 004, defendant New York City Police Department Lieutenant Noe Campos ("Lieutenant Campos") moves, pursuant to CPLR 3211 (a) (5) and (a) (7), to dismiss the amended complaint insofar as asserted against him.

160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL
Motion No.  003 004

Page 1 of 16

[* 1]

## BACKGROUND

Plaintiff Jason Callahan ("plaintiff"), a Caucasian male, was employed as a police officer by the City's Police Department (the "NYPD") for 15 years before he retired in November 2019. As alleged in the amended complaint, in or about 2015, Lieutenant Campos, an African American male, became the Commanding Officer of plaintiff's unit. Shortly thereafter, plaintiff requested leave for a line of duty injury. Lieutenant Campos denied plaintiff's request for leave. During that same time period, Lieutenant Campos denied the leave requests of two other Caucasian police officers seeking leave for line of duty injuries.

In or about August 2016, Lieutenant Campos put plaintiff in a chokehold as part of a demonstration. He squeezed extremely tight, to the point where plaintiff was unable to breath. Plaintiff began tapping and hitting Lieutenant Campos's arm. Lieutenant Campos, however, did not let go. Instead, he squeezed tighter. When Lieutenant Campos finally let go, plaintiff was gasping for air. Lieutenant Campos put three more Caucasian police officers in similarly severe and abusive chokeholds.

In or about November 2017, Officer Osbourne Smith ("Officer Smith"), an African American male, proclaimed loudly in the breakroom that plaintiff "is retarded" (Amended Complaint at ¶ 23). After plaintiff asked him what his problem was, Officer Smith placed his hand on plaintiff's throat so that plaintiff was unable to breathe and shoved plaintiff against a wall. Eventually, another police officer pulled Officer Smith away from plaintiff.

Plaintiff immediately reported the incident to his Sergeant and union delegates, who convinced him not to file an official report because they were afraid that the unit would be dismantled. The union delegates also informed plaintiff that if he filed a complaint regarding the

160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL
Motion No.  003 004

Page 2 of 16

2 of 16

[* 2]

incident, the NYPD would cause him to lose vacation days, find ways to discipline him, and that he would potentially be suspended.

Plaintiff decided not to file an official complaint. Instead, he asked Lieutenant Campos to transfer Officer Smith to a different unit. Lieutenant Campos denied the request and threatened to suspend and transfer plaintiff to the farthest precinct from his home if he reported the incident. Immediately thereafter, Lieutenant Campos authorized Officer Smith to take a three-week, unscheduled paid vacation.

In or about June 2019, plaintiff filed an anonymous Internal Affairs Complaint against Lieutenant Campos about the foregoing treatment, alleging that Lieutenant Campos discriminated against plaintiff on the basis of his race. In or about the end of June of 2019, the Internal Affairs Bureau began its investigation of the complaint and started conducting interviews with plaintiff's unit.

In or about the end of June 2019, shortly after the investigation began, Lieutenant Campos publicly confronted plaintiff in the workplace about having made the complaint. The confrontation took place within earshot of other NYPD personnel in plaintiff's unit. From that day onward, it became common knowledge among all of plaintiff's coworkers and supervisors in his unit, as well as throughout the NYPD, that plaintiff had filed an Internal Affairs discrimination complaint against Lieutenant Campos.

On or about July 2, 2019, plaintiff was transferred out of his usual shift, substantially reducing his patrol duties. A few days later, plaintiff received a text from Sergeant Jeff Rodriguez, ("Sergeant Rodriguez"), a supervisor in his unit, stating that plaintiff was no longer allowed to use his days off that are generally kept in the unit diary, but instead would have to seek permission for days off at least five days in advance. On or about August 6, 2019, the same Sergeant sent another

160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL          Page 3 of 16
  Motion No.  003 004

3 of 16

text to plaintiff reiterating the five-day notice requirement and stating that it came from another Commanding Officer with supervisory authority over plaintiff, Captain Mark Gaudios ("Captain Gaudios").

Beginning on or about July 2, 2019, and continuing through the end of November 2019, several other individuals in plaintiff's unit, "including Officers Manuel Torres ("Officer Torres")(African American), Wilkin Evangelista ("Officer Evangelista")(Hispanic), and Anthony Chow ("Officer Chow")(Asian) — and another of Plaintiff's supervisors — Sergeant William Kong ("Sergeant Kong")(African American) . . . indicated they knew about Plaintiff's filing the Internal Affairs discrimination complaint and began harassing Plaintiff about doing so on a daily basis" (*id.* at ¶ 37).

Specifically, between July 2, 2019 and November 26, 2019, Sergeant Kong and Officers Torres, Chow, and Evangelista, began calling plaintiff a "rat" and texting him pictures of rats on a daily basis. During that time, plaintiff also received a picture of a dead rat from Officer Torres, Plaintiff understood this picture to be a death threat. Plaintiff was also subjected to frivolous searches and pat downs by Sergeant Kong and Officer Torres, during which they searched for wires or other recording devices.

On or about July 12, 2019, plaintiff was called into a second Internal Affairs interview during which he was asked whether he wanted to press charges against Lieutenant Campos. Plaintiff responded affirmatively.

In or about September 2019, Sergeant Rodriguez harassed plaintiff, declaring that plaintiff had lodged an internal complaint and indicating that he might deduct overtime opportunities from plaintiff as a result. In response, plaintiff attempted to avoid the conversation and/or leave to go on patrol and thereby diffuse the situation. However, Sergeant Rodriguez refused to change the

160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL
Motion No. 003 004

Page 4 of 16

4 of 16

[* 4]

conversation or allow plaintiff to leave. Plaintiff became upset, but he did not raise his voice or in any way convey an angry outburst toward Sergeant Rodriguez. Nevertheless, almost immediately after this exchange, plaintiff was stricken of his gun, sent for psychological training, and placed on modified duty, thereby losing the opportunity to earn overtime and the key responsibility of going on patrol. According to plaintiff, these were all further acts of retaliation against him for making a complaint to Internal Affairs.

On or about October 2, 2019, plaintiff was placed back onto active duty. Upon his return, Sergeant Kong and Officers Torres, Evangelista, and Chow resumed their daily harassment of calling plaintiff a rat, sending him pictures of rats, and subjecting him to frivolous searches and pat downs for recording devices. In addition, they began calling plaintiff an "EDP" (Emotionally Disturbed Person) on a daily basis, in reference to the psychological training he underwent (*id.* at ¶ 48). By the end of November 2019, plaintiff was "forced to resign and retire from the NYPD due to the constant stress, retaliation, and harassment that he was facing on a daily basis" (*id.* at ¶ 49).

Plaintiff commenced this action against the City and Lieutenant Campos on December 14, 2022. He filed an amended complaint on June 13, 2023. The amended complaint sets forth the following eight causes of action: race discrimination under the State HRL (first cause of action); and City HRL (second cause of action); hostile work environment under the State HRL (third cause of action); and City HRL (fourth cause of action); retaliation under the State HRL (fifth cause of action); and City HRL (sixth cause of action); and constructive discharge under the State HRL (seventh cause of action); and City HRL (eighth cause of action).

160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL
Motion No.  003 004

Page 5 of 16

Defendants now separately move pre-answer to dismiss the amended complaint insofar as asserted against them. Lieutenant Campos argues that all of plaintiff's claims against him are time-barred. The City argues that some of plaintiff's claims against it are time-barred. Both defendants also argue that plaintiff has failed to state a viable cause of action alleging race discrimination, hostile work environment, retaliation, or constructive discharge under the State or City HRL.

In opposition, plaintiff argues that his claims are not time-barred pursuant to the continuing wrong doctrine, and because Executive Order No. 202.8 (9 NYCRR 8.202.8) and subsequent Executive Orders issued in response to the COVID-19 pandemic tolled the statute of limitations. Plaintiff further argues that construing his allegations liberally, he has advanced allegations sufficient to state causes of action for discrimination, hostile work environment, retaliation, and constructive discharge under both the State and City HRL.

## DISCUSSION

### *Statute of Limitations*

On a motion to dismiss a cause of action, pursuant to CPLR 3211 (a) (5), on the ground that it is barred by the statute of limitations, "the defendant bears the initial burden of demonstrating, *prima facie*, that the time within which to commence the cause of action has expired" *(MTGLQ Invs., LP v Wozencraft*, 172 AD3d 644, 644 [1st Dept 2019]). If such a showing is made "[t]he burden then shifts to the plaintiff to raise a question of fact as to whether the statute of limitations is inapplicable or whether the action was commenced within the statutory period" *(id.)*.

160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL          Page 6 of 16
Motion No.  003 004

6 of 16

Claims under the State and City HRL "must be commenced within three years after the alleged unlawful discriminatory practice or act of discriminatory harassment" (*Acala v Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.*, 222 AD3d 706, 707 [2d Dept 2023] [internal quotation marks and citations omitted]; *see Mejia v T.N. 888 Eighth Ave. LLC Co.*, 169 AD3d 613, 614 [1st Dept 2019]; CPLR 214 [2]; Administrative Code of City of NY § 8-502 [d]).

Since plaintiff commenced this action on December 14, 2022, all claims that accrued before December 14, 2019 are time-barred by the three-year statutory period. Given that all of the allegations in the complaint occurred on, or prior to, November 26, 2019, this action is facially untimely.

In arguing that he timely commenced the action, plaintiff relies on the tolling provisions issued in response to the COVID-19 pandemic. Executive Order No. 202.8 (9 NYCRR 8.202.8), and the subsequent nine orders issued by then Governor Andrew Cuomo during the pandemic, tolled the statute of limitations for the commencement of any legal action from March 20, 2020 to November 3, 2020 (228 days) (*see Matter of New York City Tr. Auth. v American Tr. Ins. Co.*, 211 AD3d 643, 643 [1st Dept 2022]). After November 3, 2020, the remainder of the statute of limitations period begins to run again (*see id.*; *see also Cruz v Guaba*, 226 AD3d 964, 965 [2d Dept 2024] [the remaining period starts to run after the toll is lifted]).

Here, the amended complaint alleges that in 2015, Lieutenant Campos denied plaintiff's request for leave and that in August 2016, he put plaintiff in a severe chokehold. Any claims based upon these allegations were time-barred by August 2019, prior to the COVID-19 tolling period taking effect on March 20, 2020. Therefore, the COVID-19 toll is not applicable to such claims.

160680/2022 CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL
Motion No. 003 004

Page 7 of 16

7 of 16

[* 7]

The next set of allegations occurred on or about November 1, 2017, when the incident involving Officer Smith occurred. When the tolling period took effect on March 20, 2020, 870 days of the 3-year statute of limitations on a claim that accrued on November 1, 2017 had elapsed. When the statute of limitations period resumed on November 3, 2020, 225 days of the 3-year period remained. Thus, the statute of limitations with respect to this claim expired on June 16, 2021. This action was commenced on December 14, 2022. Therefore, any claims based upon this occurrence are not saved by the COVID-19 toll.

The next set of allegations occurred in June and July of 2019, when plaintiff filed the discrimination complaint with Internal Affairs and was confronted in the workplace by Lieutenant Campos, leading to plaintiff being subjected to harassment on a daily basis until November 26, 2019 when he retired. When the COVID-19 tolling period took effect on March 20, 2020, 293 days of the 3-year statute of limitations on a claim that accrued on June 1, 2019 had elapsed. When the statute of limitations period resumed on November 3, 2020, 802 days of the 3-year period remained. Thus, the statute of limitations with respect to such a claim expired January 14, 2023 and it is therefore timely. Since the remainder of the allegations in the amended complaint occurred after June 1, 2019, they are also timely by virtue of the COVID-19 tolling period.

The only claims *not* saved by the COVID-19 tolling provisions are those based upon the allegation that in 2015, Lieutenant Campos denied plaintiff's request for leave, those based on the allegation that in August 2016 Lieutenant Campos put plaintiff in a severe chokehold, and those based upon the November 2017 incident involving Officer Smith.

Plaintiff argues that even assuming that these claims are not rendered timely by the COVID-19 tolling provisions, the claims are nevertheless timely under the continuing violation doctrine. The continuing violation doctrine applies where the complaint alleges facts "comprising

160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL
  Motion No.  003 004

Page 8 of 16

[* 8]

a single continuing pattern of unlawful conduct extending into the [limitations] period immediately preceding the filing of the complaint" (*Campbell v New York City Dept. of Educ.*, 200 AD3d 488, 489 [1st Dept 2021] [internal quotation marks and citation omitted]). The doctrine does not, however, apply to allegations of "discrete events, involving different actors, and occurring months to years apart" (*id.*). Since the allegations from 2015, 2016, and 2017 fall into the category of discrete events, involving different actors, and occurring months to years apart, any claims based upon such conduct are dismissed as barred by the statute of limitations.

### *Failure to State a Cause of Action and Dismissal Based on Documentary Evidence*

Defendants contend that to the extent plaintiff's claims are timely, they otherwise fail to state a cause of action. In deciding a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7), the court must "accept the facts as alleged in the complaint as true, accord plaintiff [ ] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Tax Equity Now NY LLC v City of New York*, 42 NY3d 1, 12 [2024] [internal quotation marks and citations omitted]). "The court must review each cause of action separately to determine its viability and may dismiss only those which fail as a matter of law" (*id.*). On a motion to dismiss, based on documentary evidence, pursuant to CPLR 3211 (a) (1), the moving party must show that the documentary evidence "utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]).

160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL
Motion No.  003 004

Page 9 of 16

[* 9]

*Employment Discrimination*

Both defendants argue that plaintiff's allegations fail to state claims for employment discrimination. "[E]mployment discrimination claims brought under the City and State HRLs are generally analyzed under a lenient notice pleading standard, whereby the plaintiff need not plead specific facts, but must only give the defendants fair notice of the nature and grounds of the claims" (*Walker v Triborough Bridge & Tunnel Auth.,* 220 AD3d 554, 554 [1st Dept 2023][internal quotation marks and citation omitted]; *see Vig v New York Hairspray Co., L.P.,* 67 AD3d 140, 145 [1st Dept 2009]). Under this standard, the complaint must allege: (1) plaintiff is a member of a protected class; (2) he or she was subjected to an adverse employment action under the State HRL or treated less well than other employees under the City HRL; and (3) the adverse or different treatment was made under circumstances giving rise to an inference of discrimination (*see Etienne v MTA N.Y. City Tr. Auth.*, 223 AD3d 612, 612 [1st Dept 2024]; *Campbell v New York City Dept. of Educ.,* 200 AD3d 488, 489 [1st Dept 2021]). Discriminatory motivation may be inferred from, among other things, invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group" (*Rodriguez v New York City Hous. Auth*., 225 AD3d 458, 459 [1st Dept 2024] [internal quotation marks and citation omitted]).

Here, the amended complaint fails to sufficiently allege that any adverse or different treatment was made under circumstances giving rise to an inference of discrimination. The amended complaint contains no allegations of any explicitly or implicitly invidious comments made about plaintiff's race (*see Etienne v MTA N. Y. City Tr. Auth.*, 223 AD3d at 612). Nor does it allege more favorable treatment of employees not in plaintiff's protected group. In this regard, plaintiff alleges that Lieutenant Campos, Officer Smith, and Officer Torres were African American and that the other officers who harassed plaintiff were either African American, Hispanic, or Asian.

However, alleging that these individuals are non-Caucasian is insufficient, without more, to support an inference of discriminatory intent (*see Sareen v Port Auth. of N.Y. & N.J.*, 2013 US Dist LEXIS 176093 *30 [SD NY 2013]).

While plaintiff alleges that in 2015, Lieutenant Campos denied leave to two other Caucasian officers injured in the line of duty under similar circumstances, this claim is untimely and, in any event, plaintiff does not allege that any non-Caucasian officers were granted leave under similar circumstances. For the same reason, plaintiff's allegation that in 2016, Lieutenant Campos placed him in an overly severe and abusive chokehold as part of a demonstration and that he did the same to other Caucasian officers (a claim that is also time barred), is insufficient to support an inference of discriminatory intent.

As to the alleged incident in 2017, when Officer Smith, an African American male, called plaintiff "retarded" and assaulted him by placing his hand on plaintiff's throat, any claim based upon this incident is also untimely. In any event, there are no allegations in the amended complaint from which it can be inferred that Officer Smith's actions were motivated by plaintiff's race. Plaintiff alleges that he was pressured not to report the assault and that his request for Officer Smith's transfer to another unit was denied. There are no allegations, however, indicating that a non-Caucasian officer under similar circumstances was, or would have been, treated any differently.

Any claim based upon the remainder of the allegations in the amended complaint, while timely, nevertheless fail to state a cause of action for discrimination. In this regard, none of the remaining allegations tend to show that defendants were motivated by discrimination based on plaintiff's race or that plaintiff was treated less well because of a protected characteristic.

160680/2022  CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL
Motion No.  003 004

Page 11 of 16

11 of 16

[* 11]

Thus, defendants' motions insofar as they seek dismissal of the causes of action for race discrimination under the State HRL (first cause of action) and the City HRL (second cause of action) are granted and those causes of action are dismissed.

### Hostile Work Environment

The amended complaint alleges that plaintiff was subjected to a hostile work environment based on race in violation of both the State and City HRL. "A racially hostile work environment exists [w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 310 [2004] [internal quotation marks and citations omitted]).

In opposition, plaintiff contends that the amended complaint sets forth "sufficiently severe/abusive allegations of a work environment connected to race to state viable claims for hostile work environment resulting in constructive discharge" (NYSCEF Doc. No. 48 at 12-13; NYSCEF Doc. No. 50 at 13). However, even assuming that is the case, the amended complaint fails to adequately plead discriminatory animus. As such, plaintiff's claims that he was subjected to a hostile work environment based on race under both the State (third cause of action) and City HRL (fourth cause of action) fail to state a cause of action (*see Lent v City of New York*, 209 AD3d 494, 495 [1st Dept 2022]; *Pelepelin v City of New York,* 189 AD3d 450, 451-452 [1st Dept 2020]; *Massaro v Department of Educ. of the City of N.Y.,* 121 AD3d 569, 570 [1st Dept 2014]).

Thus, defendants' motions insofar as they seek dismissal of the third and fourth causes of action are granted and those causes of action are dismissed.

160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL
Motion No.  003 004

Page 12 of 16

*Retaliation*

Under both the State and City HRL, it is unlawful to retaliate against an employee for opposing discriminatory practices (*see* Executive Law §296 [7]; Administrative Law §8-107 [7]).

> "To make out a *prima facie* claim of retaliation under the State HRL, a plaintiff must show that (1) he/she has engaged in a protected activity, (2) his/her employer was aware of such activity, (3) he/she suffered an adverse employment action based upon the activity, and (4) a causal connection exists between the protected activity and the adverse action. Under the City HRL, the test is similar, though rather than an adverse action, the plaintiff must show only that the defendant took an action that disadvantaged him or her."

(*Harrington v City of New York*, 157 AD3d 582, 585 [1st Dept 2018] [internal quotation marks and citations omitted]; *see Kwong v City of New York*, 204 AD3d 442, 443 [1st Dept 2022]). Notably, "[t]o prevail on a retaliation claim, the plaintiff need not prove that [his or] her underlying complaint of discrimination had merit, but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful" (*Kwan v Andalex Group, LLC*, 737 F3d 834, 843 [2d Cir 2013]; *see Modiano v Elliman*, 262 AD2d 223, 223 [1st Dept 1999] ["a claim for retaliatory conduct does not necessarily fail by reason of a subsequent finding that the underlying discrimination complaint, upon which the claim of retaliation is premised, is without merit"]).

Here, the amended complaint alleges that plaintiff engaged in a protected activity by filing an Internal Affairs complaint against Lieutenant Campos in June 2019 for what plaintiff perceived as discriminatory conduct. It further alleges that defendants were aware that plaintiff participated in such activity and that they retaliated against him in various ways. Defendants assert that the allegations of retaliation are insufficient to constitute an "adverse employment action" under the State HRL, or a "disadvantage" to plaintiff under the City HRL.

In this regard, plaintiff alleges that Lieutenant Campos retaliated against him by disclosing the fact that plaintiff had filed a discrimination complaint to plaintiff's co-workers, leading to plaintiff's co-workers (including Sergeant Kong) calling him a "rat," texting him photos of rats on a daily basis (including on one occasion a dead rat), and subjecting him to frivolous searches and pat downs for wires or other recording devices. This is sufficient to support a retaliation claim under the City HRL, as this conduct towards plaintiff "could have a chilling effect on future discrimination complaints" (*Bond v New York City Health & Hosps. Corp*., 215 AD3d 469, 470 [1st Dept 2023] [internal quotation marks and citation omitted]). The amended complaint further alleges that in September 2019, Sergeant Rodriguez declared that plaintiff had lodged an internal complaint and indicated that he might deduct overtime opportunities from plaintiff as a result of him having filed the complaint. The amended complaint alleges that plaintiff became upset but did not raise his voice or convey anger towards Sergeant Rodriguez. According to the amended complaint, after the exchange, defendants unjustifiably removed his firearm, sent him to psychological training, and placed him on modified duty.

Viewed as a whole, and according plaintiff the benefit of every possible favorable inference, these allegations sufficiently plead an "adverse employment action" under the State HRL, and a "disadvantage" to plaintiff under the City HRL (*see Harrington v City of New York*, 157 AD3d at 585-586 [placing a psychological hold on plaintiff's application for employment and ultimately finding him unfit for the position constituted adverse action]). Defendants contend that this allegation cannot support a retaliation claim because the NYPD's Patrol Guide permits temporary removal of firearms for non-disciplinary reasons and permits sending a police officer for a psychological evaluation. However, the NYPD's Patrol Guide does not establish that the circumstances at issue in this case justified such a response. The amended complaint alleges that

160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL
Motion No.  003 004

Page 14 of 16

14 of 16

the circumstances did not justify doing so, which must be deemed true for the purposes of assessing these motions.

Finally, contrary to defendants' contention, the fact that this incident occurred nearly three months after the protected activity is not fatal to plaintiff's retaliation claim. In this regard, there are other facts alleged supporting causation. Specifically, the amended complaint alleges that during the occurrence, Sergeant Rodriguez declared that plaintiff filed the discrimination complaint and indicated that he might deduct overtime opportunities from plaintiff as a result (*see Bateman v Montefiore Med. Ctr.,* 183 AD3d 489, 491 [1st Dept 2020] ["during the interview, the HR officer strongly suggested that plaintiff would be punished for speaking out, which further supports a finding of causal connection between plaintiff's complaints and her termination"]; *see generally Rubin v Napoli Bern Ripka Shkolnik, LLP*, 228 AD3d 595, 597 [1st Dept 2024] [the absence of temporal proximity does not defeat a claim for retaliation where there are other facts supporting causation]). Thus, defendants' motions insofar as they seek dismissal of the fifth and sixth causes of action are denied.

### *Constructive Discharge*

To state a cause of action for constructive discharge, a plaintiff must allege facts sufficient "to support an inference that defendants deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign" (*Mascola v City Univ. of New York*, 14 AD3d 409, 410 [1st Dept 2005]; *see Bond v New York City Health & Hosps. Corp*., 215 AD3d at 470-471). "The standard for establishing a claim of constructive discharge is higher than the standard for establishing a hostile work environment where, as here, the alleged constructive discharge stems from the alleged hostile work environment" (*Gaffney v*

**160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL**                                                      **Page 15 of 16**
  **Motion No.  003 004**

15 of 16

[* 15]

*City of New York*, 101 AD3d 410, 411 [1st Dept 2012] [internal quotation marks and citations omitted]).   Since the amended complaint fails to adequately plead a racially hostile work environment claim, plaintiff fails to state a cause of action for constructive discharge. Thus, defendants' motions insofar as they seek dismissal of the seventh and eighth causes of action are granted and those causes of action are dismissed.

## CONCLUSION

For all of the reasons set forth herein, it is hereby:

**ORDERED** that defendant the City of New York's motion to dismiss the amended complaint insofar as asserted against it is granted only to the extent that the first, second, third, fourth, seventh, and eighth causes of action are dismissed insofar as asserted against it, and the motion is otherwise denied (Motion Sequence Number 003); and it is further

**ORDERED** that defendant New York City Police Department Lieutenant Noe Campos's motion to dismiss the amended complaint insofar as asserted against him is granted only to the extent that the first, second, third, and fourth, seventh, and eighth causes of action are dismissed insofar as asserted against him, and the motion  (Motion Sequence No. 004) is otherwise denied;

| 11/30/2024 | | | | |
|---|---|---|---|---|
| **DATE** | | | **J. MACHELLE SWEETING, J.S.C.** | |

| **CHECK ONE:** | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | | DENIED | | GRANTED IN PART | X | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**160680/2022   CALLAHAN, JASON vs. THE CITY OF NEW YORK ET AL**                              **Page 16 of 16**
  **Motion No.  003 004**

16 of 16